**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| Kapitus Servicing, Inc., | : |
| | : |
| *Plaintiff*, | : |
| | : C.A. No.: 3:23-cv-00202-JAG |
| -vs- | : |
| | : |
| Zap's Electrical, LLC d/b/a Zaps Electrical and Brian Snow, | : |
| | : |
| | : |
| Defendants | : |
| | : |

<u>**BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

Respectfully submitted,

*/s/ Christopher A. Hatfield*
Christopher A. Hatfield (Bar No. 95224)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, D.C. 20006
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
hatfieldc@ballardspahr.com
*Counsel for Defendants*

**GARIBIAN LAW OFFICES, P.C.**

Antranig Garibian, Esquire
Attorney No: 94538
1800 John F. Kennedy Boulevard, Suite 300
Philadelphia, PA 19103
(215) 326-9179
*Attorney for Defendants*
*Admitted pro hac vice*

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................. 1

II. RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL
    FACTS ................................................................................................................. 2

    A.   Defendants' Answer ................................................................................... 2

    B.   Citizens Bank Records ............................................................................... 3

    C.   Defendants' Response to Interrogatory Number 9 .................................... 3

    D.   Defendants' Response to Interrogatory Number 13 .................................. 4

    E.   Text Messages with "Mike" ...................................................................... 5

    F.   Text Messages with "Kira" ........................................................................ 6

III. ARGUMENT ...................................................................................................... 8

    A.   Standard for Summary Judgment .............................................................. 8

    B.   Kapitus Is Not Entitled to Summary Judgment for Breach of Contract. ........ 8

    C.   Kapitus Cannot Constructively Amend Its Complaint at the Summary
         Judgment Stage. ...................................................................................... 11

    D.   Plaintiff Cannot Prove the Elements of Ratification ............................... 14

IV. CONCLUSION .................................................................................................. 16

i

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................... 8

*Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556 (4th Cir. 2008) .............. 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 11

*Celotex v. Catrett,* 477 U.S. 317 (1986) ................................................................. 8

*Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852 (7th Cir. 2017) ........................... 12

*Doe v. Fairfax Police Officer #1*, 2022 U.S. Dist. LEXIS 225627 (E.D. Va. Dec. 6, 2022) ....... 12

*Faulconer v. Centra Health, Inc.*, 808 F. App'x 148 (4th Cir. 2020) .................................... 12, 14

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004) ........................................ 12

*GW Acquisition Co., LLC v. Pageland Ltd. Liab. Co.*, 2023 U.S. Dist. LEXIS 2861 (E.D. Va.
   Jan. 6, 2023) .......................................................................................... 9

*Harris v. Reston Hosp. Center, LLC*, 523 Fed. App'x 938 (4th Cir. 2013) ............................ 12, 14

*Nationwide Mut. Ins. Co. v. Powell,* 292 F.3d 201 (4th Cir. 2002) ........................................ 15

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ......................................................... 12

*Zawod v. SIA "Baltmark Invest"*, 2013 U.S. Dist. LEXIS 168317 (E.D. Va. Nov. 26, 2013)...... 15

**Rules**

Fed. R. Civ. P. 56(c) ...................................................................................... 8

Local Rule 56(B) ........................................................................................... 2

ii

Defendants Zap's Electrical LLC ("Zaps") and Brian Snow ("Snow") submit this Brief in Opposition to Plaintiff Kapitus Servicing, Inc.'s ("Kapitus") Motion for Summary Judgment ("Motion").

## I.    INTRODUCTION

Kapitus' Motion should be denied primarily because Kapitus cannot prove the elements of a breach of contract claim. As Defendants argued in their own Motion for Summary Judgment, there is no evidence that Brian Snow signed or even knew about the "Forward Purchase Agreement" ("Agreement") that Kapitus seeks to enforce. Kapitus' Complaint alleges that Brian Snow signed the Agreement a fact which Kapitus now knows it cannot prove because there is no evidence that Mr. Snow or Zaps even knew about the Agreement, let alone signed the Agreement. There is simply no basis for Kapitus to be awarded summary judgment on its breach of contract claim.

Second, the Court should reject Kapitus' improper attempt to constructively amend its pleading through a motion for summary judgment to include facts and legal theories—specifically, "ratification"—that were not raised in the Complaint. Kapitus has now attempted to completely change its lawsuit to argue that the mere fact that Mr. Snow received money warrants summary judgment on the breach of contract claim. In the Complaint, Kapitus alleged that defendant Brian Snow executed the Agreement on June 24, 2022 with Kapitus on behalf of Zaps. (Complaint, ¶ 8). Kapitus now must essentially concede that there is no evidence that Mr. Snow or anyone associated with Zaps ever saw or signed the Agreement prior to June 24, 2022. Knowing this, Kapitus attempts to pursue the "ratification" theory through its motion for summary judgment, asserting facts and legal theories that are absent from the Complaint. This tactic is not permitted in the Fourth

Circuit, and the portions of the Kapitus's Motion advancing this new legal theory should be disregarded.

Third, even if Kapitus had properly pleaded its new ratification theory, it cannot prove the elements required for ratification. In particular, Kapitus cannot demonstrate that the putative principal had "full knowledge of the facts." The record in this matter shows without controversy that neither Brian Snow nor Zaps knew about or signed the Agreement and that an unknown third-party obtained Mr. Snow's personal information and contacted Kapitus pretending to be Mr. Snow. There is *no evidence* that Mr. Snow had any knowledge of the terms or existence of the Agreement or even that he knew who Kapitus was. Without these fundamental facts, even if Kapitus were to be permitted to pursue ratification, Kapitus cannot prevail on its theory.

## II.    RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

As a threshold matter, Kapitus' Motion does not comply with Local Civil Rule 56(B) in that it does not include a specifically captioned section listing all material facts as to which it contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. Rather than simply list a "Statement of Facts" to which Defendants could respond, Kapitus submitted an argumentative discussion regarding the facts. *See* Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Memorandum" or "Mem.") at 2-7. Nevertheless, Defendants will endeavor to respond to Kapitus' "Statement of Facts" in this opposition brief. Because Kapitus proceeds by describing the evidence in each of several sources

### A. Defendants' Answer

In its motion, Kapitus provides the Court with a self-serving editorialized description of Defendant's Answer to the Complaint without providing a single citation to the pleading other than "*See generally Answer.*" *See* Mem. at 3. Notably, Kapitus emphasizes in this section—and

throughout its brief—the term "identity theft," despite the fact that nowhere in Defendants' answer do Defendants use that term. Kapitus blithely describes Defendants' answer to suit its argument, ignoring that Defendants, in their Answer, appropriately responded to the allegations in the Complaint and did so in a manner consistent with the record in discovery, including with the testimony of Kapitus' own witnesses.

### B.  Citizens Bank Records

Defendants do not dispute the transactions reflected in the Citizens Bank records, which speak for themselves. *See* Mem. at 3-4.

### C.  Defendants' Response to Interrogatory Number 9

Defendants do not dispute their response to Interrogatory Number 9, which speaks for itself. *See* Mem. at 4. Defendants have consistently asserted that Mr. Snow believed he was entering into a loan agreement with an individual named "Mike." In 2022, Mr. Snow communicated with "Mike" regarding a proposed purchase of computers related to cryptocurrency miners that he had been discussing with an individual named "Kira." Decl. of Brian Snow ("Snow Decl.") (Decl. of Antranig Garibian ("Garibian Decl."), Ex. 5), ¶ 29. "Mike" advised Mr. Snow that he would be able to assist Mr. Snow with funding expenses related to the transaction. *Id.* Mr. Snow provided "Mike" with the information "Mike" needed in order to provide Mr. Snow with funding. *Id.* "Mike" and Mr. Snow reached an agreement that "Mike" would provide Mr. Snow with a loan of $225,000.00, and that Mr. Snow would pay "Mike" back at $2,250.00 per week. *Id.* ¶ 30. However, Mr. Snow never received a written agreement to confirm the transaction or the terms of the loan. *Id.* Moreover, Mr. Snow never agreed to have "Mike" to enter into any agreements or contracts with any third-party on behalf of either Mr. Snow or Zaps. *Id.*

3

### D. Defendants' Response to Interrogatory Number 13

Rather than cite any fact from Defendants' response to Interrogatory Number 13, Kapitus instead argues merely that Defendants have no defense because they admitted to receiving the money. Mem. at 4-5. For the benefit of the Court, below is Defendants' response to Interrogatory Number 13, which again reiterates the payment plan that Defendants had entered into with "Mike" and that Defendants never entered into a contractual agreement with Kapitus:

13.   Explain in detail the reason or reasons for not immediately returning any funds to Plaintiff after receiving a transfer from Kapitus Servicing, Inc and identify all persons, including attorneys and debt settlement companies, involved in that decision. Identify all documents,

7

conversations, or other communications regarding your decision not to return the funds immediately to Plaintiff.

**RESPONSE:** Defendants object to this request as overly broad, unduly burdensome, vague, and not reasonably calculated to lead to the discovery of admissible evidence and not related to any material issue in this litigation. This request for the names of any attorneys or debt settlement companies is intended solely to harass Defendants and is a fishing expedition, untethered to the allegations in the Complaint. Subject to and without waiver of these objections, Defendants respond as follows: Defendants have not and are not working with any debt settlement companies. Moreover, Defendants did not immediately return the funds because Defendants had agreed to a repayment plan of $2,250.00 per week, in exchange for a loan of $225,000.00. Defendants had no idea who Kapitus was when the funds were deposited into Defendants' account.

*See* Mem. Ex. 3 at 7-8.

4

### E.  Text Messages with "Mike"

Kapitus next turns to the text messages produced by Defendants, with two individuals who held themselves out as being named "Mike" and "Kira."[1] As to "Mike," Kapitus references one section of the text messages in which Mr. Snow provides "Mike" with his personal information, a fact that Mr. Snow does not dispute. *See* Mem. at 5-6, Ex. 4. Incredibly, Kapitus cites passages of the text messages that confirm that on June 24, 2022, Mr. Snow had no confirmation and no knowledge of any terms related to any funding. *Id.* at 6-7.

Moreover, Kapitus fails to cite a single message that indicates that Mr. Snow authorized "Mike" to sign any agreements on his behalf, let alone the Agreement with Kapitus, or that even mentions Kapitus at all. In fact, the evidence suggests that Mr. Snow thought that he was obtaining a $250,000.00 loan from "Mike" himself and would be making payments of $2,300.00 per week:

---

[1] In its brief, Kapitus complains that Defendants did not produce the text messages in an "easily useable format" and refers to "repeated requests" for a reproduction of those message. However, Kapitus did not complain about the format in which the messages were produced until August 23, 2023, 26 days after they were produced and nine days before the end of discovery. At that time, Kapitus' counsel asked if Defendants had any objection to Kapitus having the video transcribed. *See* August 23, 2023 Email from C. Daniel Waters, Esq. (Garibian Decl. Ex. 9). In response, counsel for Defendants suggested that Kapitus's counsel take screenshots, which Kapitus's counsel stated would be confusing to follow. *Id.* Defendants' counsel then stated that he could not stipulate to anything until he saw it, and there was no further follow up from Kapitus' counsel. *Id.* Defendants reject any suggestion that there were multiple requests to produce the documents in a different format, or that they refused at some time to do so.

papers are not in yet - I'm trying to help Kira take care of this off record. I don't think this people will not trigger unwanted attention from the workplace that I don't currently think will be right. I will ask some follow up questions so that we can continue with the order of things We are a foreign private group of company here

BRIAN SNOW: Ok

So we still will need to call into capital one at some point.. so let me Know when we can do that.. then let me know what else you need from me and when

TUE, JUNE 7 at 2:39 PM

MICHAEL COSTELLO: Yeah. We'll sort them out accordingly

BRIAN SNOW: Thanks

THUR, JUNE 8 at 1:01 PM

MICHAEL COSTELLO: Hi Brian, is this your regular texting number, because I might be needing some information anytime from now as we proceed with the 250,000 dollars loan

BRIAN SNOW: Yes

The 35k went back into your account capital one told

---

Hawaii and I need to wire funds to her asap however I can't until I get back..

MICHAEL COSTELLO: Alright- just checking to know everything is on track

BRIAN SNOW: Thanks

MICHAEL COSTELLO: and for the loan they are suggesting about $2,300 weekly payment- that shouldn't be much a problem I think?

BRIAN SNOW: Should be fine, what when where.. how do I get all that information

MICHAEL COSTELLO: I will get you the contract to sign and forth

BRIAN SNOW: Ok

TUES, JULY 5 at 1:34 PM

MICHAEL COSTELLO: Good morning Mr. Snow Brian, please lemme know when you are here

TUES, JULY 5 at 3:57 PM

MICHAEL COSTELLO: We want to send the second payment today, a code is needed from you….it can be sent to your email or phone number

BRIAN SNOW: Hi send it..sorry got back to R.I. .. haven't slept.. like dead to the world with

*See* Mot. Ex. 4, 5:17-21; *id.* 20:6-10.

### F. Text Messages with "Kira"

Kapitus also refers to text messages Mr. Snow had with "Kira."[2] See Mem. at 6-7, Ex. 3.

These messages actually demonstrate that Mr. Snow was completely caught off guard by the

---

[2] Kapitus complains about the timing and manner of Defendants' production of the text messages with "Kira." While loathe to similarly waste space on another discovery sideshow, by way of response Defendants point out that Plaintiff's discovery requests were served in the evening on July 18, 2023, 34 days before the then-scheduled close of discovery and 38 days before motions for summary judgment were due. Plaintiff's dalliance in waiting to serve discovery until, for example, nearly four months after this case was removed to this Court makes their complaint about receiving document production so close to the summary judgment date ring quite hollow. The copious amount of messages were provided as expediently as possible, as Defendants noted in their discovery responses on August 17, 2023 that they were in the process of gathering the messages from "Kira." In fact, Kapitus's counsel inquired about the production of these messages following the deposition of Tara Sturtz on September 1 and was aware the messages would be produced imminently, but did not raise any issue regarding the summary judgment motions at that time or even after receiving the production on September 6, 2023. *See* September 1, 2023 Email from Antranig Garibian, Esq. (Garibian Decl. Ex. 10). Had Plaintiff attempted to confer with Defendants regarding the summary judgment deadline, Defendants would certainly have consented to a short extension given the date of the production of the "Kira" text messages—

payments taken out of his account, which he had not agreed to. Kapitus states, in conclusory fashion, that Mr. Snow was "frustrated by the terms of the deal he accepted," Mem. at 7, but does not cite one document in the entire record that supports the argument that Mr. Snow "accepted" any deal from Kapitus. To the contrary, on page 100 of the text messages, Mr. Snow makes it clear that he asked for paperwork and details of the loans, and that he never heard back from "Mike":



Garibian Decl., Ex. 11, p. 1.

This is further supported by the September 10, 2022 statement by Mr. Snow to "Kira" that he received no paperwork and no explanation of any loans that "Mike" obtained:



Garibian Decl., Ex. 11, p. 2.

On September 13, 2022, Mr. Snow stated to "Kira" that he never knew the details of the loans that "Michael" took out in his name and that someone had called one of the lenders pretending to be Mr. Snow:

---

reasonable as the timing of their production was given when they were requested and their volume. However, Kapitus instead opted to file its since-withdrawn motion regarding a supplement or amendment the following week without conferring with Defendants before or after filing their Motion.

9/13/22, 11:23 AM
Big daddy (+14014133243)

So my fears.. now are that yes your helping tremendously, I'm looking at some items like the loans Michael took out in my name.. I never knew the girls details of.. and the company's said a Jamaican person called and said they were me.. so Michael didn't do it himself.. and the telephone numbers he provided these lenders are now disconnected.. so they are just coming after me .. Now I've paid all these fees to hopefully clear the units.. and am in a worse place now.. and it looks like we have light at the end of the tunnel but there seems to be some shady stuff that makes me scared the 85k now insurance money will clear it up.. .. with the other bad cases that I've gone through and me not knowing all the details.. it's scary.. what can you do to ease my mind? And please don't be offended I'm scared now with everything that I've gone through..

9/13/22. 11:53 AM (Viewed 9/13/22. 12:00 PM)

Garibian Decl., Ex. 11, p. 3.

## III.    ARGUMENT

### A.    Standard for Summary Judgment.

Summary judgment is an integral part of the federal rules, which are designed to secure the just and speedy determination of every action. *Celotex v. Catrett,* 477 U.S. 317 (1986). Judgment should be granted "against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Celotex*, 477 U.S. at 322, or "if the pleadings, depositions, answers to interrogatories, and submissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party can avoid summary judgment by producing evidence "upon which a [fact finder] could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

### B.    Kapitus Is Not Entitled to Summary Judgment for Breach of Contract.

Kapitus's Motion should be denied for much the same reason Defendant's Motion for Summary Judgment should be granted. Defendants did not know about the Agreement, did not sign the Agreement, and did not authorize anyone to sign the Agreement on their behalf. Other

than speculation and conjecture, Kapitus cites no evidence that demonstrates either Snow or Zaps saw or signed the Agreement or authorized any third-party to sign the Agreement on their behalf.

In Virginia, the elements of a breach of contract claim are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *GW Acquisition Co., LLC v. Pageland Ltd. Liab. Co.*, No. 1:22-cv-255 (LMB/JFA), 2023 U.S. Dist. LEXIS 2861, at *47 (E.D. Va. Jan. 6, 2023).

Here, however, Kapitus cannot meet the first element to establish a legally enforceable contractual obligation of Defendants to Kapitus. Kapitus cannot demonstrate that either Brian Snow or Zaps signed the Agreement. With respect to the Agreement itself, neither Brian Snow nor Zaps ever knew about or signed any agreement or contract with Kapitus. Snow Decl., ¶ 26. Further, neither Brian Snow nor Zaps ever authorized any third-party to sign any agreement or contract with Kapitus on our behalf. Snow Decl., ¶ 27.

The record shows that Kapitus simply sent to the Agreement to an unverified email address (justbriansnow@gmail.com) to be docusigned,—which email address Kapitus showed a high level fraud risk on Kapitus' own Fraud Risk Level Report, Exhibit M to the Sturtz 9/1/23 Dep. Tr.— indicated that the Home Distance from IP Address and Business Distance from IP Address showed high levels on the Fraud Risk Level Report. See September 1, 2023 Transcript of Deposition of Tara Sturtz (Garibian Decl. Ex. 8), p. 27:6-19. Kapitus did not verify that justbriansnow@gmail.com was an email address that belonged to Mr. Snow. See August 29, 2023 Transcript of Deposition of Jonathan Jacobson (Garibian Decl. Ex. 7), p. 55:1-21. Kapitus' own operations manager, Tara Sturtz, could not identify efforts by Kapitus to confirm that justbriansnow@gmail.com was an email address that belonged to Brian Snow. See August 30,

9

2023 Transcript of Deposition of Tara Sturtz (Garibian Decl., Ex. 10), pp. 68:16-69:3. Had Kapitus tried to confirm the email address with any basic due diligence, it would have learned that neither Brian Snow nor Zaps has ever used or been associated in any way with the email address justbriansnow@gmail.com. See Snow Decl. ¶ 18. Sturtz agreed that justbriansnow@gmail.com is a fraudulent email address. Garibian Decl., Ex. 8, pp. 10:21-11:1.

The Application submitted to Kapitus with respect to the Agreement presented similar issues. On the Application, the following email address was listed: morsemaribel17@gmail.com. This email was provided on the application by a third-party New York Tribeca Group – but Kapitus does not know who provided the information that went into the application. See Garibian Decl., Ex. 10, pp. 62:9-64:18. Neither Brian Snow nor Zaps has ever used or been associated in any way with the email address morsemaribel17@gmail.com. *See* Snow Decl. ¶19. Further, the application listed two phone numbers: (347) 201-1250 and (347) 292-9562. The (347) 201-1250 phone number was also listed on the Agreement. Neither of those phone numbers were listed in Kapitus' Clear report as phone numbers associated with either Brian Snow or Zaps. *See* Garibian Decl., Ex. 10, pp. 60:13-63:2. Kapitus ignored these obvious warning signs. Had Kapitus done its diligence, it would have discovered that neither Brian Snow nor Zaps have ever used or been associated in any way with either of the phone numbers at issue: (347) 201-1250 or (347) 292-9562. *See* Snow Decl. ¶ 20.

Most significantly, neither Brian Snow nor Zaps had ever communicated with Kapitus or any representative of Kapitus when the funds were allegedly deposited by Kapitus into Zaps' bank account in June 2022. See Snow Decl. ¶ 21. Neither Brian Snow nor Zaps were ever presented with terms with respect to any agreement or contract with Kapitus, ever asked or authorized any third-party to communicate with Kapitus on their behalf, or ever asked or authorized any third-

10

party to sign any application for funding with Kapitus or to submit any application for funding to Kapitus. *Id.* ¶¶ 22-24. The signature on the application produced by Kapitus in this action is not Brian Snow's signature. *Id.* ¶ 25. Moreover, Kapitus cannot point to any evidence that it even tried to verify the signature on the application. In fact, Sturtz testified that she was not aware of whether anybody at Kapitus compared the signature on the application to either Mr. Snow's driver's license or the voided check on file to confirm the authenticity of the signature despite the fact that Kapitus employees were trained to do so. *See* Garibian Decl., Ex. 10, pp. 67:5-68:10.

Kapitus ignored the fact that in its own background check of Snow and Zaps, the email address to which the Agreement was sent did not belong to either Snow or Zaps. The evidence shows that Kapitus simply ignored all of the warning signs, including the fact that none of the phone numbers or email addresses were associated in any way with either Brian Snow or Zaps. Brian Snow's consistent and unequivocal denial that he or Zaps ever spoke to Kapitus, saw the Agreement or signed the Agreement remains utterly unrefuted. As such, Plaintiff cannot establish that either defendant owes a contractual obligation to Kapitus and as a result, not only is Kapitus not entitled to summary judgment on Count I (Breach of Contract)**,** but Defendants should be granted summary judgment on that count as set forth in their own motion.

C.      **Kapitus Cannot Constructively Amend Its Complaint at the Summary Judgment Stage.**

Kapitus' Complaint alleges that Brian Snow executed the Agreement. Now that it knows it cannot prove that fact, Kapitus attempts to constructively amend its Complaint in its motion for summary judgment by adding a "ratification" theory. This attempt to constructively amend the Complaint is improper and prejudicial to Defendants, and it should be disregarded.

Kapitus cannot assert new facts and theories at this late stage. A complaint is meant to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

11

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration omitted); *see also Doe v. Fairfax Police Officer #1*, No. 1:21-cv-1150 (AJT/JFA), 2022 U.S. Dist. LEXIS 225627, at *21 (E.D. Va. Dec. 6, 2022) (noting that the Federal Rules require pleadings to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (*quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).

Fourth Circuit precedent is clear that new legal theories cannot be advanced in a motion for summary judgment. *See Harris v. Reston Hosp. Center, LLC*, 523 Fed. App'x 938, 946 (4th Cir. 2013) (affirming district court's refusal to consider "a new legal theory for the first time in opposing summary judgment" on the grounds that it "amounted to constructive amendment of the amended complaint and thus unfairly prejudiced the defendant"). A plaintiff may not "plead one theory and one set of facts in [its] complaint, and then proceed to trial on an entirely different theory supported by entirely different facts." *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 154 (4th Cir. 2020). Such a "wholesale change" is "tantamount to a constructive amendment of a complaint, and 'the district court has discretion to deny the *de facto* amendment and to refuse to consider the new factual claims.'" *Id.* (*quoting Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017)); *see also Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." (*quoting Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004))).

Kapitus' Complaint never put Defendants on notice that they would have to defend against a ratification claim or anything remotely resembling the ratification arguments made in Kapitus' Motion. Kapitus' Complaint alleged that Brian Snow, in his capacity as owner of Zaps Electrical, LLC, signed the Agreement and the Guaranty. Complaint, ¶¶ 6-8. From the earliest stages of this

12

case, Kapitus was aware that Defendants denied that Brian Snow signed the Agreement. As early as March 31, 2023, Kapitus was on notice that Defendants denied signing the Agreement through Defendants' original answer to the Complaint:

> 4. Denied. Neither Zaps nor Snow ever signed the subject contract, and both categorically deny being parties to said contract, referred to in this paragraph as the "Contract" and elsewhere in the Complaint as the "Agreement," and both categorically deny being parties to said contract or having any liability to Plaintiff under the Agreement. Further answering, upon information and belief, a third-party posing as Zaps and Snow signed the contract with Plaintiff, unbeknownst to either Zaps or Snow and without any authority from either Zaps or Snow. Further answering, both Zaps and Snow categorically deny that this Court has any basis to exercise personal jurisdiction over either Zaps or Snow in this action. Further answering, this paragraph appears to refer to a
>
> 1
>
> Case 3:23-cv-00202-JAG   Document 4   Filed 03/31/23   Page 2 of 15 PageID# 58
>
> document that speaks for itself and any mischaracterization thereof is denied. Further answering, this paragraph calls for a legal conclusion, which Defendants refer to the Court.

Answer ¶ 4.    Kapitus was *again* notified of Defendants' position on May 1, 2023, when Defendants filed their Amended Answer to the Complaint.

> 4. This paragraph contains legal conclusions that do not require Defendants to answer. To the extent an answer is deemed required, denied. Further answering, neither Zaps nor Snow ever signed the subject contract, and both categorically deny being parties to said contract, referred to in this paragraph as the "Contract" and elsewhere in the Complaint as the "Agreement," and purportedly attached to the Complaint as Exhibit 1 ("Agreement") and both categorically deny being parties to the Agreement or having any liability to Plaintiff under the Agreement. Further answering, upon information and belief, a third-party posing as Zaps and Snow signed the contract
>
> 1
>
> Case 3:23-cv-00202-JAG   Document 9   Filed 05/01/23   Page 2 of 13 PageID# 86
>
> with Plaintiff, unbeknownst to either Zaps or Snow and without any authority from either Zaps or Snow. Further answering, both Zaps and Snow categorically deny that this Court has any basis to exercise personal jurisdiction over either Zaps or Snow in this action. Further answering, this paragraph refers to a document that speaks for itself and any mischaracterization thereof is denied.

13

Amended Answer (ECF Doc. No. 9), ¶4.

Kapitus proceeded on its theory that Brian Snow signed the Agreement, opting not to amend (or even move for leave to amend) its pleading. Through discovery, Defendants propounded interrogatories, document requests and took depositions based on Kapitus' Complaint. Defendants prepared their entire defense of this action based on the Complaint that Kapitus *did* file – not the Complaint it wishes it had filed. The attempt by Kapitus to now add facts and legal theories at the last minute is prejudicial to Defendants and should not be allowed. *See Faulconer*, 808 F. App'x at 154 ("[A]llowing such a constructive amendment at summary judgment may unfairly prejudice the defendant, by depriving it of the notice it needs to conduct effective discovery."); *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013) (affirming district court refusal to consider new argument in summary judgment as an "impermissible attempt to constructively amend the complaint" and noting that '[b]ecause a complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations, constructive amendment of the complaint at summary judgment undermines the complaint's purpose and can thus unfairly prejudice the defendant." (internal quotation marks omitted)). The Court should deny the "*de facto* amendment and . . . refuse to consider the new factual claims," *Faulconer*, 808 F. App'x at 154.

### D.      Plaintiff Cannot Prove the Elements of Ratification.

Even if Kapitus were permitted to constructively amend its Complaint and pursue its newly proposed ratification theory, Kapitus cannot prove the elements to prevail on a ratification claim, let alone obtain summary judgment.

Ratification is the 'adoption and the confirmation by one person of an act or contract performed or entered into [o]n his behalf by another who at the time assumed to act as his

14

agent." *Zawod v. SIA "Baltmark Invest*," No. 1:12cv515 (JCC/IDD), 2013 U.S. Dist. LEXIS 168317, at \*19 (E.D. Va. Nov. 26, 2013) (*citing Nationwide Mut. Ins. Co. v. Powell,* 292 F.3d 201, 205 (4th Cir. 2002)). Ratification requires three elements to be present: (1) acceptance by the putative principal of the acts of the would-be agent; (2) full knowledge of the facts by the putative principal; (3) circumstances demonstrating the putative principal's intent to accept the act or contract. *Id.*

Kapitus cannot prove the elements required to show that Defendants ratified the Agreement. First, Kapitus does not cite any evidence to suggest that Brian Snow executed the Agreement, knew about the Agreement or knew that his name was signed to the Agreement. Second, Kapitus does not cite any evidence to suggest that Brian Snow or Zaps (the putative principals) had full knowledge of the facts. In fact, the evidence cited by Kapitus suggests that Mr. Snow thought that he was obtaining a $250,000.00 loan from "Mike" and that he would be making payments of $2,300.00 per week:

| 5 | 20 |
|---|---|
| papers are not in yet - I'm trying to help Kira take care of this off record. I don't think this people will not trigger unwanted attention from the workplace that I don't currently think will be right. I will ask some follow up questions so that we can continue with the order of things We are a foreign private group of company here<br><br>    BRIAN SNOW: Ok<br>So we still will need to call into capital one at some point.. so let me Know when we can do that.. then let me know what else you need from me and when<br>TUE, JUNE 7 at 2:39 PM<br>    MICHAEL COSTELLO: Yeah. We'll sort them out accordingly<br>    BRIAN SNOW: Thanks<br>THUR, JUNE 8 at 1:01 PM<br>    MICHAEL COSTELLO: Hi Brian, is this your regular texting number, because I might be needing some information anytime from now as we proceed with the 250,000 dollars loan<br>    BRIAN SNOW: Yes<br>The 35k went back into your account capital one told | Hawaii and I need to wire funds to her asap however I can't until I get back..<br>    MICHAEL COSTELLO: Alright- just checking to know everything is on track<br>    BRIAN SNOW: Thanks<br>    MICHAEL COSTELLO: and for the loan they are suggesting about $2,300 weekly payment- that shouldn't be much a problem I think?<br>    BRIAN SNOW: Should be fine, what when where.. how do I get all that information<br>    MICHAEL COSTELLO: I will get you the contract to sign and forth<br>    BRIAN SNOW: Ok<br>TUES, JULY 5 at 1:34 PM<br>    MICHAEL COSTELLO: Good morning Mr. Snow Brian, please lemme know when you are here<br>TUES, JULY 5 at 3:57 PM<br>    MICHAEL COSTELLO: We want to send the second payment today, a code is needed from you….it can be sent to your email or phone number<br>    BRIAN SNOW: Hi send it..sorry got back to R.I. .. haven't slept.. like dead to the world with |

Mot. Ex. 4 5:17-21; Mot. Ex. 4 20:6-10.

The text messages between Mr. Snow and "Mike" are also consistent with Defendants' interrogatory responses, specifically to Interrogatories 13 and 15, in which Defendants state that they thought they were obtaining a loan of $225,000 from "Mike" and that they would be obligated to pay "Mike" back $2,250.00 per week. Plaintiff's Ex. 3 (pp. 7-9). Moreover, as stated above with respect to the text messages between Mr. Snow and "Kira," the record shows that (1) Mr. Snow made it clear that he asked for paperwork and details of the loans, and that he never heard back from "Mike," *see* Garibian Decl., Ex. 11, p. 1; (2) Mr. Snow stated that he received no paperwork and no explanation of any loans that "Mike" obtained, *see id.* p. 2; and (3) Mr. Snow stated to "Kira" that he never knew the details of the loans that "Mike" took out in his name and that someone had called one of the lenders pretending to be Mr. Snow, *see id.* p. 3.

Notably, Kapitus does not point to a single piece of evidence to suggest that Defendants knew about the Agreement, were familiar with its terms, understood that the Agreement was a purchase of future receivables, were aware of the amount and frequency of the payments, or even knew the identity of Kapitus. Kapitus clearly cannot prove that Defendant had full knowledge of the facts as required to pursue a ratification claim.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion for Summary Judgment should be denied.

September 22, 2023                                Respectfully submitted,

                                                  */s/ Christopher A. Hatfield*
                                                  Christopher A. Hatfield (Bar No. 95224)
                                                  BALLARD SPAHR LLP
                                                  1909 K Street NW, 12th Floor
                                                  Washington, D.C. 20006
                                                  Telephone: (202) 661-2200

Facsimile: (202) 661-2299
hatfieldc@ballardspahr.com
*Counsel for Defendants*

GARIBIAN LAW OFFICES, P.C.

Antranig Garibian, Esquire
Attorney No: 94538
1800 John F. Kennedy Boulevard, Suite 300
Philadelphia, PA 19103
(215) 326-9179
*Attorney for Defendants*
*Admitted pro hac vice*

17

## CERTIFICATE OF SERVICE

I hereby certify that on this September 22, 2023, a copy of the foregoing Brief in Opposition to Plaintiff's Motion for Summary Judgment was filed with the Clerk of Court for the United States District Court for the Eastern District of Virginia by using the CM/ECF system, which will send a notification of such filing to all parties.

*/s/Christopher A. Hatfield*